Next case on today's docket is the case of Department of Transportation v. Larry Winkler. We have Mr. Marshall for the appellant and Mr. Thomas Hunter for the appellant. Mr. Marshall, you can proceed when you're situated. Mr. Marshall, you may be seated. This was actually my first case, my first trial. I was just out of law school. I actually had the quick take before that, but my first jury trial. I think it was the judge's first eminent domain case. And this is also my first appeal, so first time for everything. I was a real estate appraiser for 13 years prior to becoming a lawyer. And my area of emphasis is in the domain cases. Busy preparing for this case, my first trial, prepared for months. I get a call Monday morning, which is a holiday. The trial starts on Tuesday. And one of my expert witnesses. Was that call on Martin Luther King Jr.'s birthday? I believe it was. If I recall from the briefs, and here we are the day after. That's right. It's the same holiday, in court again. But anyway, go ahead. That's right. Exactly. So I put on, so I get the call. And my arbiter, who was a backup expert to my real estate appraiser. He was being called to bolster the opinion of the real estate appraiser. And he says that, oops, he's discovered that there's a math error in his calculation. And his valuation of the trees is off by about 20%. And the valuation is about 20% lower. So, oh my gosh, what do I do now? And I thought back to a CLE class that I had. And a senior litigator said that he had an appraiser made a million dollar error while he was on the stand. Noticed he made a million dollar error. And the litigator said, here's a pen. Just go ahead and cross it out and make the adjustment. So I thought, well, everything's already done. We have a trial tomorrow. I'll just change his, I'll just question him. And he'll change his testimony on the stand. So I went on with things. I put on the real estate appraiser. On Tuesday, the trial carried over to Wednesday. And Wednesday morning, about 2 a.m., all of a sudden, a light goes off in my head. I got a continuing obligation under discovery to disclose the fact that this real estate, I'm sorry, the arbiter had made a math error. So we go into chambers with the judge before Wednesday. And I said, I got this call from the tree expert, and he made a math calculation. Attorney on the other side went ballistic and said, you know, this is horrible. It's a 219 sanction because the real estate appraiser had based his opinion on the arbiters. I'd just like to say this whole thing, there was no accusation or showing of bad faith on our part. And that seems to be, it's interesting. They chose a case, Szymanowski versus GM, which was actually the case where one of the parties had destroyed evidence. And there was no showing of bad faith in that case. And it was actually reversed. The 219 sanction was considered to not be warranted in that case. Provided an affidavit from, at the post-trial motion for retrial, provided an affidavit from the real estate appraiser that his valuation would not have changed had the tree valuation changed. And the judge in the case and the other attorney, I think, are mistaken in the belief that somehow the tree expert was a foundation for the valuation of the real estate. But in Illinois, we have the Univ. Rule. And I'm not a big fan of the Univ. Rule. I think the Univ. Rule is taking a meat ax where a scalpel is more appropriate. But the Univ. Rule says that you cannot present evidence based on component parts. That the sum of the component parts do not equal the whole. And therefore, the appraisal must be based on the value of the whole property. I think it's a mistaken misconception that I get a lot of time in appraisals. People say, well, I spent $50,000. I built this pool or I built this new kitchen. Why is the value of my house only going up by $20,000? The cost of the parts is not what determines the market value. Well, you know, I have some problems understanding that. With respect to, are you saying then the trees had no effect on the overall value? That's on the market value. That's correct. The market value of the whole property. I'm not saying that the trees, you have to evaluate them on the whole property. You don't evaluate the trees separately. So the 20% made no difference. Exactly. The 20% error. Right. The analogy I use sometimes for people is like an automobile. If you go to buy an automobile, maybe it costs $20,000. You go to the parts department and you add up the cost of each individual part, maybe $100,000. It would be ridiculous. That's the purpose of the uniform. Okay. So what an appraiser does is he looks at, I got a $20,000 car new before damage. I got a damaged car back in smash or something worth $10,000. So he goes out and he looks at the marketplace. New cars, $20,000. Smashed up cars, $10,000. He goes to car auctions or whatever. Okay. Then under the Illinois procedure, the appraiser then allocates the part taken. So then he might go to the parts department. He might go to the salvage yard or whatever and say the parts are $5,000. Okay. So then he takes the market value difference, the before and after value, which is the difference of $10,000. That includes parts and depreciation or appreciation as a result of the damage. Okay. So if he goes to the- So if the parts are the trees, he still does consider the trees. He considers the trees as part of the part taken but not as part of the overall damages and part taken. So, in other words, he's got a market value difference of $10,000. Excuse me. And he goes to the parts department. If that's all true, why did you even go out and hire an arborist? Exactly. That's right. To me, you're making their argument in the top court. Right. I couldn't find any case, any Illinois case, where they had an arborist testify. And in my tree promotion, all I found was a torch pit where a tree limb fell on somebody who was by the park. And they used an arborist, you know. So the only reason for the arborist was just to boast, in other words. And to be honest, I knew the judge was kind of a stickler for having experts. You know, I had this problem before in the quick take hearing, you know. In other words, you can look at the property line and say there are 10 trees there. You know, here's the line and those 10 trees are going to be gone. So theoretically, you wouldn't need an arborist. But then there's other issues about whether you have a tree that's two feet from the line. Whether, you know, a bulldozer is going to drive up and down and possibly damage those roots. Whether there's a potential for that tree to be damaged later on down the road. But you presented that arborist's testimony as part of the appraiser's testimony. He relied on those in writing, didn't he? All I did was I asked the appraiser to put that in his addendum. And there were two addendums. There was also a tree nursery. Cost of trees from the nursery. So that was a different figure. But then counsel didn't have an opportunity to cross-examine based upon this different information that you already had. Isn't that true? That you knew about before trial. That would be correct. That would be correct on the addendum. But what I say is that they had the mistaken belief that I didn't think it was important. It didn't strike my mind as being important. Because there's no correlation between the number or the arborist number and the number in DEMDA's evaluation. And DEMDA used a lot of other factors to come up with his value. Comparable sales. Comparable with trees and comparable without trees. And he relied on 35 years of experience and other cases where trees were gone. He did not need the arborist to do his evaluation. As I say, the only reason I asked him to put the addendum in there is because I thought I wouldn't be able to get the arborist in. But isn't it true that you were allowed to put your evidence on out of order? Out of order, you mean because I... You went first. I guess. In a lot of both states, that's standard procedure. And I guess I assumed it was... Well, in other words, by the time you finally told opposing counsel about these differences, your witness was already gone and could not be cross-examined. That's correct. It just didn't occur to me that that would be an issue. And, yes, maybe it would have made a 100% cleaner case if I had disclosed that ahead of time. Do you agree that our standard of review here is abuse of discretion? Not necessarily because I think there was clear error. In my brief, I cited a case where comparable sales are considered to be objective evidence separate and apart from testimony of the expert. And the case is Kem where it says that, you know, the comparable sales data allows the jury to look at objective evidence. And there were comparable sales in Mr. Demba's written appraisal report, which is still on the record, which was never stricken from the record. And I think that's clear error. There also is, in my brief on standard of review, the decision, the credibility of an expert's testimony. And there's a case that said that the credibility of the expert's testimony is a matter of law, and that would be reviewed in Oakland. And so I think what happened in this case was the judge made his decision that he thought the credibility of the real estate expert was in doubt because this addendum had changed. And as I say, mathematically, his valuation could not have changed because of the proper procedure. It's in my case law. It's in Nichols, you know, Nichols on eminent domain, which is the treaties on eminent domain procedure. It says what you have to determine is the market value of the whole. And as I say, six times after intense cross-examination by the other side, Mr. Demba said, I value the whole. He said, did you value the part taken? Mr. Demba said, no, I didn't value the part taken. I value the whole property. And you must value the whole. As I say, you can't, there's no other way to determine damages or appreciation. In other words, if like my car example, if the car is $20,000 and it's after value of $10,000, and you go to the parts department and the parts cost $12,000. Okay, the parts exceed the difference in damages. Well, then what you've had is you've had appreciation in the profit. The project has increased the after value by $2,000, and that would be why the parts would be more, you know. An appraiser will check the parts. Another extreme example would be you got $10,000 in damages and the parts cost 50 cents. Okay. Well, that may cause the appraiser to go back and look and say, well, maybe I made a mistake. If there's only 50 cents in part taken and there's 10,000 damages, they'll look again at its comparable sales data and its market data. And he would either say, well, no, my market data is correct. I have a case right now where we've got, you know, a little $10,000 in property taken. The state says it's $120,000, and, you know, we think it's $300,000 in damages because of what results in the market. You don't look at the market value. You don't look at the whole. You can't determine, you know, the true difference. You don't get a correct figure. And, again, I cited one of my cases that says that the emphasis is not on what is taken. The emphasis is on what remains. And what they mean, what remains, is what's the value of that in the appraiser? What's the market value in the appraiser? I don't think the answer to your question. So, and ‑‑ Well, I do have another question. One of the things that you raise here on argument is that it didn't make any difference in that you submitted an affidavit. That affidavit was in post-trial. Is that correct? That's correct. And that affidavit was not subject to cross-examination. Is that right? That is correct. So that was never presented in the trial court at the time the trial judge made his ruling. That's correct because he had gone. And, I mean, I think there was time to call the appraiser. I said, I don't know, I can ask the appraiser when he can come back. The judge never allowed me time to call the appraiser and ask him. I'm sure he could have. He just kind of floored me. I just didn't connect the dots. I think it was a misconception, like I say, that they had, that his appraisal was foundationally based on the tree expert, and it was the opposite. The only reason why I put the appraiser on first and why I asked him to put the addendum in, if I just tried to present the tree expert, I would have probably gotten an objection on the unit rule, and I wouldn't have had any argument to counter it much. You had to hire the tree expert for the purpose of boosting the market value of the whole, right? No. Why would you even be bothering with the tree expert unless it was your position that the trees increased the value of the whole? The tree expert because it would be like, for example, as I put in my brief, if the appraiser looks at it, if the damage comes along, like they take a driveway, and maybe they take, I don't know, a building or something like that, the appraiser is going to say, well, I'm going to look at comparables that have less driveway, less parking, or what have you, and he's going to do that. So I had to convince the jury that the appraiser knows what he's talking about. Okay? So my first case, I'm just being overly cautious, and I'm saying, well, who can I get to bolster the appraiser? My first thought was to have the nursery guy testify, you know, the value of the tree is based on the nursery, and I knew it was better probably to have a certified arborist, somebody that has some, you know, credentials. It was to bolster the testimony of the appraiser, not to be determinative of it. Well, that wasn't my question. I mean, but the whole point is property with some nice trees on it may be worth more than property with no trees. And that is a decision for the realistic appraiser to determine. And in reaching his opinions, he cited to the fact that one of the things he relied on was the report of your arborist. That's right, one of the things he relied on. I would say that the right to cross-examine is, in their brief, is important. I think their case they cited was Trolley v. Jones, and what they were saying was that it was okay to cross-examine an expert about how much money he was getting paid and how often he testified, whether he's a paid expert kind of thing. Also in Trolley v. Jones, it talks about Wilson v. Clark, and talked about the fact that experts can testify that they relied on hearsay evidence and that experts can testify without prior disclosure of facts that they relied on. In other words, their appraiser said, I think she violated the rule, she said, well, here's the value before, and then I valued the part taken, and then I subtracted the part taken from the whole, and then I went out and talked to some real estate people to see if there was any damage to the property. And they told me, no, there was no damage. And that's not correct. Wilson v. Clark doesn't have anything to do with withholding information that you knew before your expert gets put on the stand, does it? They just cited that that's the law in Illinois, that Wilson v. Clark. In Trowler, the court said that as a result of Wilson v. Clark, this is what the law is. And the quote is that they can testify without prior disclosure of facts that they relied on. In other words, they rely on a bunch of facts. 35 years, you know, he gets on the stand, he says, I relied on 35 years of experience, hundreds of cases that I've done, evaluating, looked at trees, looked at swimming pools, going in, things like that. But you were sanctioned and your expert was stricken because you didn't have knowledge that part of the information that he may have relied on was inaccurate and did not disclose it. That is correct. And I view that as, I think the only way you can view that is a punitive sanction. And the case law is clear in saying that 219 discovery sanctions are not designed to be punitive, but they're supposed to promote discovery. I can't fathom any way that it promoted my discovery, the sanction. You'll have the opportunity for rebuttal, Mr. Marshall. Thank you. Mr. Hunter. May it please the court. My name is Tom Hunter. I'm here to proudly represent the Illinois Department of Transportation. Appellant and his brief presents, I believe, six different issues. But our view of this matter is that it's simply one issue. And the simple issue is this, whether or not the trial court exercised its discretion appropriately in barring the opinion testimony of Mr. Demba. And I think that not only did the trial court exercise its discretion, I think that any other action by the trial court not barring it would have been an abuse of discretion. Justice Stewart took the point that I had, the irony of that. We're here the day after Dr. King's birthday. It's one year out. The parties had conferred on Monday. There was time for conference then. We had the trial that began on Tuesday. On Wednesday, the disclosure was made. There are certain standards that are set underneath 219C, and the court viewed it as a discovery violation, so applied those standards. Those are well-established. Six different matters to look at. You look at the surprise to the party, the prejudicial effect, the nature of the testimony, the diligence of the side on the adverse side, whether or not a timely objection was made, and whether or not the party presented an action and was in good faith. You look at these factors for whether or not there was the opposing party, because the department was prejudiced, or whether or not it affects the integrity of the judicial system. We have a matter here where an expert was presented. That expert relied on information that was incorrect. That expert was cross-examined by the department without knowledge that that information was incorrect. If you look at the proceeding of the cross-examination and actually the testimony of Mr. Demba, the appraisal expert, it's clear that he's relying upon it not only just to bolster, but to explain the whole of the value of the property. It's brought out an opening statement. It's attempted to be brought out and then relied upon for Mr. Rocha's indirect examination. It comes up again in cross-examination, as is explained in our brief. And more damning than that, upon re-crossing, redirect, he's built up. And then re-cross, he comes back to it and says, yeah, but I relied upon Mr. Rocha. It's all there. It's all there in the record. He relied upon it. The court had no other option to bar this expert. Mr. Demba was presented on Tuesday. Mr. Rocha was there on Wednesday. On Tuesday, if you look through the record, you will see that Mr. Demba indicates he's not going to be available on Wednesday, that he has a doctor's appointment. The court, when the matter was brought to his attention, recollected that, brought back that, asked if Mr. Demba could be brought in. He was unavailable. The court made it factual, finding that there was no offer of proof made nor reasonable attempt to do so, then looked at the factors and made its rulings. It's that simple.  But what about his argument that it didn't make any difference and that he presented an affidavit? That gets back to cross-examination, Your Honor. Counsel brought up the case of Trower, which we do cite. Trower is back from, I believe, the 1980s, when the proliferation of expert testimony was coming about. Trower has an excellent opinion that explains that. We're having all these experts within our corporates itself. We need to have some check on that. And the check is, of course, to have full and thorough cross-examination of experts. When we get back to Wilson, bringing back additional information that wasn't necessarily brought out beforehand, what the court is saying, the way to check that is to have thorough cross-examination. The department was deprived of cross-examination of the appraisal expert of the property owner. Thank you, Mr. Hunter. Thank you. Mr. Marshall, do you have a rebuttal? Yes. You said there's one issue. I think there's several. I think there's also the constitutional issue, which you didn't talk about. There's just compensation guaranteed in the United States Constitution. It's guaranteed in the Illinois Constitution. Illinois statute on eminent domain says that just compensation is determined by the jury. Illinois case law says that the purpose of the eminent domain trial is to determine just compensation. I don't think the purpose is that the Department of Transportation gets to have a 100% clean case. There's no cases that are going to be 100% clean. I correct one thing he said. He said that in the case law, I said that DEMBA was not available. I didn't say DEMBA was not available. I said, I don't know if DEMBA is available. I could contact DEMBA, but the jury judge did not allow me an opportunity to contact DEMBA. Wasn't there something about a doctor's appointment or something? On Tuesday, he said that he had a doctor's appointment. I mean, a doctor's appointment doesn't take all day. I didn't know when it was. I didn't know if it was morning or afternoon or when he would come back. I just said, I don't know. My recollection of records, I said, I don't know. I don't know if I said I could call them. I don't think I did that. That was my application. I think also the standard of review, which you had brought up, is that the judge would be, if he dismisses an expert, it would be judged under abuse of discretion. The law, also in many cases in DEMBA domain, says that the judge's ruling on that will not be disturbed if both sides are able to present evidence to the jury. I think this is obviously what happened in this case. It's dispositive of that rule that we were not allowed to show any evidence to the jury. And actually evidence, as I say, the objective comparable sales that were in the written appraisal report were not allowed to be seen by the jury. The whole purpose, I say, of this procedure is just compensation for the property owner. If the state has the power to take, there's a counterbalance that just compensation for the property owner. For all those reasons, that's why we're requesting a remanded for new trial. Thank you for your time. Thank you. Thank you, Mr. Marshall. And Mr. Hunter, we'll take the matter under advisement and render a ruling in due course. We'll render a ruling in due course. Take it under advisement. Thank you.